USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/20/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
TANIT BUDAY,

                        Plaintiff,

        -against-                          11 Civ. 2628 (DAB)
                                                ORDER

NEW YORK YANKEES PARTNERSHIP,

                        Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     Now before the Court is Defendant's Motion to Dismiss the

First Amended Complaint.  Because the Court concludes that it

lacks subject matter jurisdiction, this matter is DISMISSED in

its entirety.


I. BACKGROUND

     The following facts are drawn from the First Amended

Complaint ("Compl.") and are assumed true for purposes of the

Motion now before the Court.

     Plaintiff Tanit Buday ("Plaintiff" or "Buday") is the niece

of Kenneth Timur ("Timur"), who is now deceased but who

previously resided in Brooklyn, New York. (Compl. ¶¶ 8-9.) Timur,

a graphic illustrator with expertise in heraldry, calligraphy,

lettering, and cartooning, had a sister, Stella, who was a

manicurist. (Compl. ¶¶ 10-11.)  Stella counted Jacob Ruppert

("Ruppert") and Del Webb ("Webb"), who were then the owners of

the New York Yankees baseball franchise, among her customers.

(Compl. ¶ 12.)  "In 1936, Mr. Ruppert told Stella that the
Yankees needed someone with fresh ideas to create a new logo for
the Yankees." (Compl. ¶ 13.)  Stella told Mr. Ruppert about her
brother. (Compl. ¶ 14).  Though Timur was living in Europe at the
time, Ruppert, on behalf of the Yankees, commissioned Timur to
create a logo (the "Logo"). (Compl. ¶¶ 18, 15.)  The resulting
Logo, which included a top hat and bat, was essentially similar
to the top hat logo currently in use by the Yankees. (Compl. ¶¶
16-17.)  Stella, on behalf of Timur, presented the Logo to
Ruppert, who accepted it on behalf of the Yankees. (Compl. ¶ 18.)
However, Timur was not paid or otherwise recognized for his
creation of the Logo. (Compl. ¶ 18.)  In fact, Timur remained
unaware that the Yankees were using his Logo until he emigrated
to New York City some eleven years later, in 1947.[1] (Compl. ¶
19.)

In 1946, Webb, on behalf of the Yankees, commissioned Timur
to revise the Logo in anticipation of the fact that the Yankees
would celebrate their fiftieth year in New York six years later,
in 1952.[2] (Compl. ¶ 20.)  Timur was uniquely qualified for such a

---

[1]Plaintiff does not explain why Stella did not communicate
the good news concerning the Yankees' acceptance of the Logo to
her brother, as would seem logical given that she arranged the
alleged business relationship between Timur and the Yankees.

[2]Plaintiff does not attempt to reconcile the fact that Timur
was ignorant until 1947 that the Yankees were using his Logo with
the fact that in 1946 he was commissioned by the Yankees to

commission; indeed, "[o]nly the herald Timur had the expertise to revise the Yankees' 'crest' so the Yankees had to come back to him." (Compl. ¶ 25.)   Timur created a second version of the Logo for the Yankees in 1947. (Compl. ¶ 26.)   Among other new features, this version was "signed" by Timur, who substituted his signature letter "P" for the numeral "9" so that the date 1903 on the Logo appeared as "1P03." (Compl. ¶¶ 27-31.)   In 1947, Timur took his revised Logo to the Yankees and showed it to them. (Compl. ¶ 46.)   Timur agreed to transfer the Logo to the Yankees, who in turn "agreed to remunerate and recognize Timur" for the Logo. (Compl. ¶ 47.)

The Yankees never recognized or remunerated Timur during his lifetime. (E.g., Compl. ¶¶ 48, 58.)   Sometime during the 1960s, "and after Timur had lost his confidence and trust in the Yankees, [Timur] told Plaintiff that his claims against the Yankees now belonged to her in the hope that she would pursue them." (Compl. ¶ 60.)   As Timur's assignee, Plaintiff brings claims for violation of common-law copyright (Count One); unjust enrichment (Count Two); conversion (Count Three); breach of contract (Count Four); quantum meruit (Count Five); breach of fiduciary duty (Count Six); and accounting (Count Seven).

---

revise that same Logo.

(Compl. ¶¶ 57-117.)

Plaintiff filed her original Complaint in this matter on April 18, 2011. (Docket #1.)  That Complaint invoked this Court's subject matter jurisdiction on the grounds of diversity of citizenship pursuant to 28 U.S.C. § 1332. (Docket #1 at ¶ 6.)

On May 18, 2011, Defendant filed a Motion to Dismiss which effectively showed that Parties are not completely diverse since, perhaps unsurprisingly, the general and limited partners in the New York Yankees Partnership and its subsidiary entities include a number of New York-domiciled individuals. (See Docket # 8.) Rather than oppose the Motion to Dismiss, Plaintiff timely filed the First Amended Complaint, which again alleges diversity jurisdiction, (Compl. ¶ 6, 7), but also attempts to invoke this Court's federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). (Compl. ¶ 7.)  Defendants filed the instant Motion to Dismiss on July 8, 2011. (Docket # 12.)


II. JURISDICTION

Under the Federal Rules, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); accord Cave v. E. Meadow Union Free School Dist., 514 F.3d 240, 250 (2d Cir. 2008)("If a court perceives at any state of the proceedings that it lacks

4

subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action.").

Plaintiff has not opposed Defendant's initial Motion to Dismiss, which effectively showed that both Plaintiff and Defendant are citizens of New York.  Accordingly, diversity jurisdiction will not lie pursuant to 28 U.S.C. § 1332.

Plaintiff also alleges subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Section 1331 provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Section 1338(a) provides that the district courts shall have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights." 28 U.S.C. § 1338(a).

After the passage of the 1909 Copyright Act and prior to promulgation of the 1976 Copyright Act, an author could claim a common-law property right, sometimes termed a common-law copyright, to prevent others from exploiting an unpublished work. Shoptalk, Ltd. v. Concorde-New Horizons Corp., 168 F.3d 586 (2d Cir. 1999) (examining history of statutory and common-law protections after passage of 1909 Copyright Act and before passage of 1976 Copyright Act).  By contrast, statutory copyright protection during that period was only available if the works

5

were "published" within the meaning of the 1909 Copyright Act.
Id.. It is well-settled that common-law copyright following
passage of the 1909 Copyright Act was governed by state, not
federal, common law. E.g. Oliveira v. Frito-Lay, Inc., 251 F.3d
56, 64 n.2 (2d Cir. 2001) (identifying applicability of
common-law copyright to recording made prior to passage of
applicable copyright statute as unresolved question of state
law); Baltimore Orioles, Inc. v. Major League Baseball Players
Ass'n, 805 F.2d 663, 674 n.20 (7th Cir. 1986) ("Before the
Copyright Act of 1976 became effective, there had been a dual
system of federal statutory and state common-law copyright
protection in effect in the United States since the first
copyright statute in 1790.")(citations omitted); Stevens v.
Gladding, 58 U.S. 447, 454 (1854) ("There being no common law of
copyright in this country, whatever [federal] rights are
possessed by the proprietor of the copyright must be derived from
some grant thereof, in some act of congress, either nominatim or
by a satisfactory implication."); Wheaton v. Peters, 33 U.S. 591
(1834) (explaining that common-law copyright originates in state,
not federal, common law, since "[i]t is clear, there can be no
common law of the United States").

     Here, Plaintiff expressly alleges that she possesses a
common-law copyright rather than a statutory copyright, and that

6

neither Timur nor Plaintiff has ever published the Logo.  (Compl. ¶ 62, 60.)  Plaintiff's copyright claim, to the extent it is cognizable at all, thus arises under state rather than federal law.[3]  Accordingly, this Court's subject matter jurisdiction will not lie under 28 U.S.C. § 1331, as no federal question is present.  Similarly, because Plaintiff's copyright claim is expressly brought as a common-law claim, it does not arise under any Act of Congress relating to copyright and jurisdiction will not lie under 28 U.S.C. § 1338(a).  Wells v. Universal Pictures Co., 166 F.2d 690 (2d Cir. 1948).

Because this Court lacks subject-matter jurisdiction, this action must be DISMISSED in its entirety.

Moreover, if the Court were to have jurisdiction over this matter, it would find that Plaintiff's First Amended Complaint utterly fails to state a claim upon which relief may be granted.  All of Plaintiff's non-copyright claims have been barred by the applicable statutes of limitation for over half a century.  Plaintiff's argument that equitable estoppel applies to toll the statutes of limitation because the Yankees somehow concealed the Logo's provenance from the Logo's own creator is laughable.

---

[3]The Court notes that common-law copyright protection was abrogated, in its entirety, by the Copyright Act of 1976, which preempts all state laws governing subject matter within the scope of that Act. 17 U.S.C.A. § 301.

As to her copyright claim, Plaintiff attempts to allege a violation of common-law copyright despite the fact that all such actions were preempted in their entirety by the Copyright Act of 1976, 17 U.S.C.A. § 301.  Moreover, even if a common law action remained viable, Plaintiff has alleged facts showing that the Logo was commissioned by the Yankees; that Timur transferred the Logo to the Yankees; and that the Yankees published the Logo by displaying it to a substantial number of members of the general public as part of the Yankees uniform, among other places.  These facts, taken as true, are logically incompatible with Plaintiff's claim to a right of exclusivity in the Logo as an unpublished work — the common-law property right which, prior to being abrogated by the 1976 Copyright Act, was sometimes referred to as a common-law copyright.

Conversely, if the Court were to ignore Plaintiff's allegations to the contrary and construe her copyright claim as one seeking recovery for copyright infringement under the 1909 Copyright Act, which would bring it within the Court's subject matter jurisdiction, it would find that the facts on the face of Plaintiff's complaint show that the Logo is no longer protected by copyright.  The 1909 Copyright Act provided authors with an initial 28-year term of protection, calculated from the date of publication, which could be renewed for one additional term of 28

8

years.  See 17 U.S.C. § 24 (repealed effective 1978).  It appears
from the face of the Complaint that the Logo was published,
within the meaning of the 1909 Copyright Act, no later than 1936.
(See Compl. at Ex. A-1 ("Logo In Use since 1936")).  Copyright
protection under the 1909 Copyright Act would therefore have
expired no later than 1964, absent renewal, and no later than
1992, if renewal had been sought and received.  However,
Plaintiff alleges that Timur transferred whatever copyright
interests he possessed in the Logo to her "during the 1960s"
(Compl. ¶¶ 64, 67-68) after failing to pursue them on his own
behalf (Compl. ¶ 33); that Plaintiff did not begin her
investigation into the Logo in earnest until 1995 (Compl. ¶ 36);
and that Plaintiff finally sought and was refused copyright
registration in 2007, (Compl. ¶ 7).  Accordingly, if Plaintiff's
copyright claim were interpreted as arising under the 1909
Copyright Act rather than under common law, that claim, too,
would be subject to dismissal based on Plaintiff's own
allegations.


III.  CONCLUSION

    Plaintiff's First Amended Complaint, which appears to be
entirely without merit, is DISMISSED as outside this Court's
subject matter jurisdiction.

The Clerk is directed to close the docket in this case.

SO ORDERED.

Dated:    New York, New York

          October 20 , 2011

                                        *Deborah A. Batts*
                                    _____
                                      Deborah A. Batts
                                   United States District Judge

10